```
                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF NEW JERSEY
```

THE BANCORP BANK,

    Plaintiff,                             CIVIL NO. 15-4451(NLH)(AMD)

    v.

                                             OPINION

CONDOR DEVELOPERS, LLC,
DANIEL BROWN, NJG
ACQUISITIONS, LLC, ENPHRONT
INC., and STATE OF NEW
JERSEY,

    Defendants.

**APPEARANCES**:

PHILIP S. ROSENZWEIG
SILVERANG & DONOHOE LLC
595 E. LANCASTER AVENUE
SUITE 203
ST. DAVIDS, PA 19087
    On behalf of Plaintiff

DAVID JOHN AZOTEA
LEVINE STALLER SKLAR CHAN & BROWN PA
3030 ATLANTIC AVENUE
ATLANTIC CITY, NJ 08401
    On behalf of Defendants

**HILLMAN, District Judge**

    This matter concerns claims by Plaintiff, The Bancorp Bank, regarding the default on the financing of a property in Atlantic City, New Jersey that provides housing to veterans. Presently before the Court is Plaintiff's motion for summary judgment against Defendants Condor Developers, LLC ("Condor"), NJG Acquisitions, LLC ("NJG") and Daniel Brown ("Brown"). For the

reasons expressed below, Plaintiff's motion will be granted in part and continued in part.

## BACKGROUND

In 2008, Defendants took over a 14-unit townhome project in Atlantic City, New Jersey as housing for U.S. military veterans. Due to various problems with construction and damage from Super Storm Sandy in October 2012, Defendants were unable to complete the project, even with increased financing, and eventually defaulted on loans and lines of credit extended by Plaintiff for principal in the amounts of $5,100,000 and $950,000, respectively.[1] The defaulted obligations were backed by personal guarantees executed by NJG and Brown.[2]

In June 2015, Plaintiff instituted the instant foreclosure and breach of contract action against Condor, NJG, and Brown. In

---

[1] Plaintiff claims that the unpaid principal balance under the loan is $4,916,309.50, and that the unpaid principal balance under the line of credit is $947,978.36.

[2] Brown is the sole member of NJG. As is discussed more fully below, NJG and Brown provided personal guarantees to Plaintiff in order to secure additional financing for the project. During the course of discovery, Plaintiff learned that in addition to NJG and Brown, two former members of Condor also provided personal guarantees: Jack A. Gartner, Jr. and Joseph D. Jenci. In October 2016, Plaintiff filed a third amended complaint to assert breach of contract claims against Gartner and Jenci. (Docket No. 75.) NJG and Brown filed an answer to the third amended complaint, and asserted counterclaims against Plaintiff and cross-claims against Gartner and Jenci. (Docket No. 76.) It is unclear from the docket whether these new defendants were served with the third amended complaint or the cross-claims, and they have not appeared in the action.

2

February 2016, the Court held a hearing on Plaintiff's motion to appoint a receiver, and the Court granted that motion. The receiver has been managing the property ever since.

Plaintiff has filed a motion for summary judgment in its favor on all of its claims against Condor, NJG, and Brown, and on Defendants' counterclaims against it, which include claims for fraud in the inducement, breach of covenant of good faith and fair dealing, intentional misrepresentation, malicious prosecution, and unlawful permanent contract rescission.

Condor and NJG do not contest that judgment be entered on Plaintiff's claims against them. Brown, however, argues that disputed issues of material fact remain over his obligation under his personal guarantee. Brown admits that he signed a guarantee on the line of credit, but denies that he is individually liable. Brown claims that Plaintiff's former vice president, Michael Schreiber, stated to Brown on various occasions that the loans would be extended, and Brown would not be held personally liable for the line of credit upon any potential default because the bank would simply repossess the property. Brown argues that this dispute also compels the Court to deny Plaintiff's motion for summary judgment on his counterclaims.

In its moving brief, Plaintiff argues that it is entitled to summary judgment on Brown's counterclaims because he has not provided any evidence to support his claims, including failing to

depose Michael Schreiber or any other bank representative. Plaintiff argues that Brown's self-serving testimony regarding Schreiber's alleged fraud to induce Brown to sign a personal guarantee is insufficient to maintain his counterclaims. Plaintiff, however, did not file a reply brief in further support of its motion to specifically counter Brown's argument that his testimony presents a material disputed fact that precludes Plaintiff's motion for summary judgment on its breach of contract claims against Brown.

**DISCUSSION**

**A.  Jurisdiction**

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000. The citizenship of the parties is as follows: Plaintiff is a citizen of the State of Delaware, and Defendants are citizens of the States of New York and New Jersey.[3]

**B.  Standard for Summary Judgment**

Summary judgment is appropriate where the Court is satisfied that the materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, or interrogatory answers,

---

[3] The two defendants added to the action through Plaintiff's third amended complaint are citizens of New Jersey. (TAC ¶¶ 6, 7.)

demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(a).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)(quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id. Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 256-57. A party opposing

5

summary judgment must do more than just rest upon mere allegations, general denials, or vague statements. Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

**C. Analysis**

Defendant Condor does not contest summary judgment with respect to Count I (breach of contract against Condor), Count II (mortgage foreclosure against Condor), or Count III (demand for possession), since that claim is now moot through the February 2016 appointment of the receiver. Defendant NJG also does not contest summary judgment on Count V (breach of contract against Brown and NJG).[4]

As stated above, Brown contests summary judgment on Plaintiff's breach of contract claim arising out his personal guarantee for the line of credit. Brown also contests summary judgment with respect to all of Defendants' counterclaims against Plaintiff, arguing that his testimony about Schreiber's alleged statements presents material disputed facts that preclude the entry of summary judgment.

Specifically, Brown states in his certification attached to

---

[4] All Defendants argue that an order of judgment should not be entered in Plaintiff's favor on the claims for which Defendants have conceded liability, arguing that Plaintiff should provide an accounting to justify the amounts demanded. Because Plaintiff has only cited to its complaint to support the unpaid principal balances due, and does not cite any document to support the per diem interest amount, Plaintiff is directed to file a proposed form of judgment with documentation to support its damages for its claims against Condor and NJG.

6

his opposition brief that he undertook the project to provide housing to veterans because it was an issue very dear to him and he wanted to make a difference in their lives. Brown states that he had a good working relationship with Schreiber, and that Schreiber told him on various occasions that the bank would not enforce the personal guarantees, and it only needed them to secure the financing. Brown states that Schreiber's statements were material to his signing the guarantees and that he would not have signed them but for those representations. Brown also asserts that he was under the impression that Bancorp would work with him to avoid defaulting Brown and his entities, including through such means as providing additional extensions to the mortgage and loan agreement or by seeking to repossess the project and relieve Brown of his personal guarantees on the notes.

Brown states that in addition to construction delays, Super Storm Sandy severely damaged several of the units, and then fire damaged another unit, and the insurance proceeds did not nearly cover the cost of repairs. When the notes became due and payable, Condor and NJG could not repay the loans, and Brown offered to return the property to Plaintiff. Instead, Plaintiff filed the instant lawsuit, and Brown relates that he is dire financial circumstances and does not have the financial wherewithal to pay back those funds. He also states that he is considering filing for personal bankruptcy.

To state a claim for fraudulent inducement, a plaintiff must demonstrate: (1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages. <u>Gennari v. Weichert Co. Realtors</u>, 691 A.2d 350, 367, 148 N.J. 582, 610 (N.J. 1997).[5]

The introduction of extrinsic evidence to prove fraud in the inducement is a well-recognized exception to the parol evidence

---

[5] A party who proves the he was fraudulently induced to enter a contract has two choices – either rescind or affirm the contract. See <u>Tonglu Rising Sun Shoes Co., Ltd. v. Natural Nine (USA) Co., Ltd.</u>, 2016 WL 7374543, at *3 (D.N.J. 2016) (citing <u>Daibo v. Kirsch</u>, 720 A.2d 994, 998 (N.J. Super. Ct. App. Div. 1998)) (other citation omitted). When a plaintiff seeks only equitable remedies such as rescission, however, the plaintiff needs to prove equitable fraud, which is a lesser burden than proving legal fraud. <u>Tonglu</u>, 2016 WL 7374543, at *3 (D.N.J. 2016) (citing <u>Jewish Ctr. of Sussex Cty. v. Whale</u>, 86 N.J. 619, 625 (1981) ("[W]hatever would be fraudulent at law will be so in equity; but the equitable doctrine goes farther and includes instances of fraudulent misrepresentations which do not exist in the law."). Unlike a plaintiff claiming legal fraud, a plaintiff claiming equitable fraud does not need to prove the defendant's scienter in making the misrepresentation; rather, a plaintiff seeking rescission of a contract based on fraud in the inducement, must show by clear and convincing evidence: (1) a material misrepresentation of a presently existing or past fact; (2) the maker's intent that the other party rely on it; and (3) detrimental and reasonable reliance by the other party. <u>Id.</u> We have substantial doubts that Brown can sustain his fraud in the inducement claim in that it requires a misrepresentation regarding a "presently existing or past fact" and Brown only appears to claim misrepresentation as to a future intention, i.e., that the bank would not act in the future on the personal guarantees. That deficiency alone may defeat his claim. In the additional briefing ordered below, the parties should expressly address this issue.

rule. Everest Nat. Ins. Co. v. Sutton, 2008 WL 3833586, at *7 (D.N.J. 2008) (quoting Alexander v. CIGNA Corp., 991 F. Supp. 427, 436-37 (D.N.J. 1998)) (other citation omitted). The parol evidence rule "'operates to prohibit the introduction of oral promises to alter or vary an integrated written agreement.'" Id. (citation omitted). "'Extrinsic evidence to prove fraud is admitted because it is not offered to alter or vary express terms of a contract, but rather, to avoid the contract or to prosecute a separate action predicated upon the fraud.'" Alexander, 991 F. Supp. at 436 (quoting Filmlife, Inc. v. Mal "Z'' Ena, Inc., 598 A.2d 1234, 1235 (N.J. Super. App. Div. 1991)), cited in Everest, 2008 WL 3833586, at *7. A party may not, however, seek to contradict the express terms of a writing to avoid obligations he knowingly assumes. Everest, 2008 WL 3833586, at *7.

For example, in Everest, the defendant signed a personal guarantee, and after the plaintiff filed suit to recover under the guarantee, the court granted the plaintiff's motion for summary judgment on the defendant's fraudulent inducement counterclaim, rejecting the defendant's declaration, in which he stated that "the guaranty instrument was a mere 'formality,' that it 'would be torn up in a matter of months,' that it would never be enforced,' and that it was only 'window dressing' to appease Everest's Board of Directors." Everest, 2008 WL 3833586 at *6-7. The court found that because the personal guarantee embodied the final written

expression of the parties' agreement – "This Agreement is intended by the parties as a final expression of their agreement, is intended as a complete statement of such agreement, and is in lieu of any oral understanding." – and because the alleged false promise by the plaintiff directly contradicted the terms of the written agreement, the defendant's allegations, even if true, were prohibited by the parol evidence rule. Id.

In making its decision, the court looked to Fr. Winkler KG v. Stoller, 839 F.2d 1002 (3d Cir. 1988), which presented an analogous situation:

> The plaintiff, Winkler, sought to recover on defendant Stoller's guarantee of certain promissory notes. Like Defendants here, Stoller alleged that "he was told that his guarantee was 'a mere formality' and that he would never be held personally liable on it," and Stoller argued that such representations constituted fraud. However, the Third Circuit found that the guarantee "embod[ied] the final written expression of the parties' agreement" and held that "proof in support of a guarantor's allegation that his indorsement was required only as a matter of form, and that it would never be enforced, is prohibited by the parol evidence rule." "To hold that parties made two contracts at the same time, one of which is in positive contradiction of the other is somewhat fantastic." The court noted that the evidence "would do more than simply modify the notes' terms; it would utterly extinguish them." Consequently, the Third Circuit affirmed the trial court's entry of summary judgment against Stoller.

Everest, 2008 WL 3833586 at * 7 (internal citations omitted).

In this case, neither party has squarely addressed the application of the parol evidence rule in the context of Brown's claims of fraudulent inducement. Plaintiff has supported its

10

breach of contract claim against Brown by showing he signed a personal guarantee and he has breached the personal guarantee, both of which Brown admits to.  To support his defense to Plaintiff's breach of contract claim, Brown essentially contends that he cannot be held to have breached the contract because no contract existed due to Schreiber's fraudulent statements that induced Brown to sign the guarantee.

Brown has the burden of proof to support his fraudulent inducement counterclaim, and he also has the burden of proof to support his fraudulent inducement defense to Plaintiff's breach of contract claim.  Ordinarily, in cases where the issue of fraud had been raised by the defendant in the context of a plaintiff's breach of contract claim, it is necessary to decide the same factual issue for the fraud claim in order to determine the enforceability of the contract involved in the case. See  Goen Technologies Corp. v. NBTY, Inc., 2007 WL 2595753, at *5 (D.N.J. 2007) (citing T.P.O. v. Federal Deposit Insurance Corp., 487 F.2d 131 (3d Cir. 1973); Associated Hardware Supply Co. v. Big Wheel Distributing Co., 355 F.2d 114 (3d Cir. 1964)).  Accordingly, if "the claims in a complaint and compulsory counterclaim are so closely related that an issue of fact in one may prove important to both, then summary judgment on the complaint is inadvisable when material issues of fact remain as to the counterclaim."  Id. (citations omitted).

The same situation is presented here.  Plaintiff seeks judgment in its favor on its breach of contract claim against Brown, who counterclaims that the contract was induced by fraud. As mentioned above, Plaintiff does not directly address Brown's fraud claims, other than to argue in its moving brief that his conclusory allegations are insufficient to maintain his counterclaims.  Additionally, neither Plaintiff nor Brown addresses whether the personal guarantee embodied the final written expression of the parties' agreement, which, if it did, would preclude Brown's allegations of false promises under the parol evidence rule.

Therefore, because it is necessary to decide the same factual issue for the fraud claim in order to determine the enforceability of the personal guarantee, the Court will direct each party to file a supplemental letter brief to address the issues identified above.  Based on the submissions, the Court will determine whether Plaintiff is entitled to summary judgment on Plaintiff's breach of contract claim against Brown, and Brown's fraudulent inducement counterclaim against Plaintiff.[6]

---

[6] Several claims asserted in Plaintiff's third amended complaint are not the subject of its motion for summary judgment: Count VII Fraud/Fraudulent Inducement against Defendants Brown and/or Condor; Count IX Conversion/Misappropriation against Defendants Brown and/or Condor; and Count X Conspiracy against all Defendants.  Plaintiff's claims against the two recently added defendants are also outstanding.  In its supplemental letter brief, Plaintiff shall address how it intends to proceed on those claims.

**CONCLUSION**

As observed by the New Jersey courts more than 100 years ago, a person is "usually bound by the import of documents signed by them and which they had the ability and opportunity to read." Filmlife, Inc., 598 A.2d 1234 at 1236 (citing Alexander v. Brogley, 63 N.J.L. 307 [43 A. 888] (E. & A. 1899) (other citations omitted). Having charged fraud, Brown has assumed the burden of proving its existence as an inducement to the making of the contract. See Invengineering, Inc. v. Foregger Co., 184 F. Supp. 366, 373 (D.N.J. 1960)(citing City of Clifton v. Cresthaven Cemetery Ass'n, 71 A.2d 655, 657 (N.J. Super. Ct. App. Div. 1950) ("The burden of establishing fraud rests upon the party who asserts it."). The parties are directed to file supplemental letter briefs to address whether Brown can meet that burden to defeat summary judgment.

An appropriate Order will be entered.


Date: __August 4, 2017__         __s/ Noel L. Hillman__
At Camden, New Jersey        NOEL L. HILLMAN, U.S.D.J.