**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

---

THE BANCORP BANK,

    Plaintiff,

      v.

CONDOR DEVELOPERS, LLC,
DANIEL BROWN, NJG
ACQUISITIONS, LLC, ENPHRONT
INC., and STATE OF NEW
JERSEY,

    Defendants.

CIVIL NO. 15-4451(NLH)(AMD)

**OPINION**

---

**APPEARANCES**:

PHILIP S. ROSENZWEIG
SILVERANG, DONOHOE, ROSENZWEIG and HALTZMAN, LLC
595 E. LANCASTER AVENUE
SUITE 203
ST. DAVIDS, PA 19087

    *On behalf of Plaintiff*

ANTHONY MORGANO
LEVINE STALLER SKLAR CHAN & BROWN PA
3030 ATLANTIC AVENUE
ATLANTIC CITY, NJ 08401

    *On behalf of Defendants*

**HILLMAN**, District Judge

This matter concerns claims by Plaintiff, The Bancorp Bank, regarding the default on the financing of a property in Atlantic City, New Jersey that provides housing to veterans. Presently before the Court is Plaintiff's motion for summary judgment against Defendant Daniel Brown on a personal guaranty he signed

in connection with the financing for the property. For the reasons expressed below, Plaintiff's motion will be granted as to liability against Brown, with additional instructions by the Court regarding the entry of judgment against him and the other defendants.

## BACKGROUND

On August 17, 2017, the Court granted Plaintiff's motion for summary judgment on its claims against Defendants Condor and NJG. The Court reserved decision on Plaintiff's motion for summary judgment on its claims against Brown arising from a personal guaranty signed by Brown, and the Court ordered supplemental briefing. (Docket No. 92, 93.) Plaintiff and Brown timely complied with the Court's order (Docket No. 94, 95), but numerous subsequent events, including an imminent sale of the subject property, compelled the Court to refrain from addressing Plaintiff's claims against Brown, as well as refrain from entering final judgment against Condor and NJG.

On May 1, 2019, the Court held oral argument on Plaintiff's claims against Brown. It now appears the sale of the property has fallen through and it remains under the control of the court-appointed receiver. Plaintiff's claims against Brown under the personal guaranty remain pending and ripe for resolution. The Court now issues the following Opinion, restating the background from the prior Opinion, to support the

ultimate determination that Brown is liable under the personal guaranty he entered into with Plaintiff.  As discussed further, however, final judgment as to damages shall not be entered against Brown at this point, with the Court directing the parties to undertake certain steps to facilitate an equitable process for effecting such a judgment.

By way of background, in 2008 Defendants took over a 14-unit townhome project in Atlantic City, New Jersey as housing for U.S. military veterans.  Due to various problems with construction and damage from Super Storm Sandy in October 2012, Defendants were unable to complete the project, even with increased financing, and eventually defaulted on loans and lines of credit extended by Plaintiff for principal in the amounts of $5,100,000 and $950,000, respectively.[1]  The defaulted obligations were backed by personal guarantees executed by NJG and Brown.[2]

---

[1] At the time Plaintiff filed its summary judgment motion, Plaintiff claimed that the unpaid principal balance under the loan was $4,916,309.50, and that the unpaid principal balance under the line of credit was $947,978.36.

[2] Brown is the sole member of NJG.  As is discussed more fully below, NJG and Brown provided personal guarantees to Plaintiff in order to secure additional financing for the project.  During the course of discovery, Plaintiff learned that in addition to NJG and Brown, two former members of Condor also provided personal guarantees:  Jack A. Gartner, Jr. and Joseph D. Jenci. In October 2016, Plaintiff filed a third amended complaint to assert breach of contract claims against Gartner and Jenci. (Docket No. 75.)  NJG and Brown filed an answer to the third

In June 2015, Plaintiff instituted the instant foreclosure and breach of contract action against Condor, NJG, and Brown.[3] In February 2016, the Court held a hearing on Plaintiff's motion to appoint a receiver and granted that motion. The receiver has been managing the property ever since.

Plaintiff filed a motion for summary judgment in its favor on all of its claims against Condor, NJG, and Brown, and on Defendants' counterclaims against it, which include claims for fraud in the inducement, breach of covenant of good faith and fair dealing, intentional misrepresentation, malicious prosecution, and unlawful permanent contract rescission.

Condor and NJG did not contest that judgment be entered on Plaintiff's claims against them. Brown, however, argues that disputed issues of material fact remain over his obligation under his personal guaranty. Brown admits that he signed a guaranty on the line of credit, but denies that he is individually liable. Brown claims that Plaintiff's former vice president, Michael Schreiber, stated to Brown on various

_____

amended complaint, and asserted counterclaims against Plaintiff and cross-claims against Gartner and Jenci. (Docket No. 76.) It is unclear from the docket whether these new defendants were served with the third amended complaint or the cross-claims, and they have not appeared in the action.

[3] This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.

occasions that the loans would be extended, and despite what the executed guarantees explicitly state Brown would not be held personally liable for the line of credit upon any potential default because the bank would simply repossess the property. Brown argues that this dispute also compels the Court to deny Plaintiff's motion for summary judgment on his counterclaims.

In its moving brief, Plaintiff argues that it is entitled to summary judgment on Brown's counterclaims because he has not provided any evidence to support his claims, including failing to depose Michael Schreiber or any other bank representative. Plaintiff argues that Brown's self-serving testimony regarding Schreiber's alleged fraud to induce Brown to sign the personal guaranty is insufficient to maintain his counterclaims. Brown argues that the personal guaranty was not the final expression of their agreement since it does not contain an integration clause, and maintains that his affidavit regarding Schreiber's misrepresentations remains unrebutted by Plaintiff, and therefore establishes a genuine issue of material fact which precludes summary judgment.

## DISCUSSION

### A.    Standard for Summary Judgment

Summary judgment is appropriate where the Court is satisfied that the materials in the record, including depositions, documents, electronically stored information,

affidavits or declarations, stipulations, admissions, or interrogatory answers, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(a).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit.  Id.  In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor."  Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)(quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial.  Id.  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must

identify specific facts and affirmative evidence that contradict those offered by the moving party. <u>Anderson</u>, 477 U.S. at 256-57. A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements. <u>Saldana v. Kmart Corp.</u>, 260 F.3d 228, 232 (3d Cir. 2001).

**B.   Analysis**

Whether Brown is liable under the personal guaranty hinges on the evidentiary impact of Brown's pre-guaranty discussions with Schreiber. Brown states in his certification attached to his opposition brief (Docket No. 91-1) that he undertook the project to provide housing to veterans because it was an issue very dear to him and he wanted to make a difference in their lives. Brown states that he had a good working relationship with Schreiber, and that Schreiber told him on various occasions that the bank would not enforce the personal guarantees, and only needed them to secure the financing. Brown states that Schreiber's statements were material to his signing the guarantees and that he would not have signed them but for those representations. Brown also asserts that he was under the impression that Bancorp would work with him to avoid defaulting Brown and his entities, including through such means as providing additional extensions to the mortgage and loan agreement or by seeking to repossess the project and relieve

Brown of his personal guarantees on the notes.[4]

Brown argues that his discussions with Schreiber prior to his signing the personal guaranty raise issues of material fact as to (1) whether the personal guaranty document he signed was the parties' final expression of their agreement, and (2) whether Brown was fraudulently induced into signing the guaranty.

With regard to whether the personal guaranty document constitutes the four corners of the parties' agreement, or whether Brown's conversations with Schreiber are also part of the agreement, "parol evidence is admissible in construing a contract, not to change the contract's unambiguous terms, but to put the words in context." Viglione v. Frisina, 2013 WL 1457581, at *6 (N.J. Super. Ct. App. Div. 2013) (citing Conway v. 287 Corp. Ctr. Assoc., 187 N.J. 259, 268-70 (2006)) (other citation omitted). The New Jersey Supreme Court has explained:

> The polestar of construction is the intention of the parties to the contract as revealed by the language used,

---

[4] Brown states that in addition to construction delays, Super Storm Sandy severely damaged several of the units, and then fire damaged another unit, and the insurance proceeds did not nearly cover the cost of repairs. When the notes became due and payable, Condor and NJG could not repay the loans, and Brown offered to return the property to Plaintiff. Instead, Plaintiff filed the instant lawsuit, and Brown relates that he is dire financial circumstances and does not have the financial wherewithal to pay back those funds. He also states that he is considering filing for personal bankruptcy, but as of the date of this Opinion, there is no indication that Brown has filed bankruptcy.

taken as an entirety; and, in the quest for the intention, the situation of the parties, the attendant circumstances, and the objects they were thereby striving to attain are necessarily to be regarded. The admission of evidence of extrinsic facts is not for the purpose of changing the writing, but to secure light by which to measure its actual significance. Such evidence is adducible only for the purpose of interpreting the writing - not for the purpose of modifying or enlarging or curtailing its terms, but to aid in determining the meaning of what has been said. So far as the evidence tends to show, not the meaning of the writing, but an intention wholly unexpressed in the writing, it is irrelevant.

Id. (quoting Conway, 187 N.J. at 269).

"Where a contract demonstrates that the parties have merged all prior negotiations and agreements in writing, the parol evidence rule bars evidence of prior negotiations and agreements tending to add or vary the terms of the writing being considered." Id. (citation omitted). A court must "read as a whole all writings forming part of the same transaction." Id.

As for Brown's claim of fraud, "it is an accepted principle that 'fraud operates to discharge the guarantor from his liability on the guaranty, and may be set up by him as a defense to an action on the guaranty.'" Ramapo Bank v. Bechtel, 539 A.2d 1276, 1279 (N.J. Super. Ct. App. Div. 1988) (quoting 38 C.J.S., Guaranty § 32 at 1170-1171). "The facts concealed, however, must be facts which if known by the guarantor would have prevented him 'from obligating himself, or which materially increase his responsibility . . . .'" Id. (quoting at 38 C.J.S., Guaranty § 32 at 1171).

To state a claim for fraudulent inducement, a plaintiff must demonstrate: (1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages. Gennari v. Weichert Co. Realtors, 691 A.2d 350, 367, 148 N.J. 582, 610 (N.J. 1997).

A party who proves the he was fraudulently induced to enter a contract has two choices – either rescind or affirm the contract. See Tonglu Rising Sun Shoes Co., Ltd. v. Natural Nine (USA) Co., Ltd., 2016 WL 7374543, at *3 (D.N.J. 2016) (citing Daibo v. Kirsch, 720 A.2d 994, 998 (N.J. Super. Ct. App. Div. 1998)) (other citation omitted). When a plaintiff seeks only equitable remedies such as rescission, however, the plaintiff needs to prove equitable fraud, which is a lesser burden than proving legal fraud. Tonglu, 2016 WL 7374543, at *3 (D.N.J. 2016) (citing Jewish Ctr. of Sussex Cty. v. Whale, 86 N.J. 619, 625 (1981) ("[W]hatever would be fraudulent at law will be so in equity; but the equitable doctrine goes farther and includes instances of fraudulent misrepresentations which do not exist in the law."). Unlike a plaintiff claiming legal fraud, a plaintiff claiming equitable fraud does not need to prove the defendant's scienter in making the misrepresentation; rather, a plaintiff seeking rescission of a contract based on fraud in the

inducement, must show by clear and convincing evidence: (1) a material misrepresentation of a presently existing or past fact; (2) the maker's intent that the other party rely on it; and (3) detrimental and reasonable reliance by the other party.  Id.

For a claim of fraudulent inducement, an exception to the parol evidence rule applies.  The parol evidence rule "'operates to prohibit the introduction of oral promises to alter or vary an integrated written agreement,'" but the introduction of extrinsic evidence to prove fraud in the inducement is a well-recognized exception to the parol evidence rule.  Everest Nat. Ins. Co. v. Sutton, 2008 WL 3833586, at *7 (D.N.J. 2008) (quoting Alexander v. CIGNA Corp., 991 F. Supp. 427, 436–37 (D.N.J. 1998)) (other citation omitted).

"'Extrinsic evidence to prove fraud is admitted because it is not offered to alter or vary express terms of a contract, but rather, to avoid the contract or to prosecute a separate action predicated upon the fraud.'"  Alexander, 991 F. Supp. at 436 (quoting Filmlife, Inc. v. Mal "Z'' Ena, Inc., 598 A.2d 1234, 1235 (N.J. Super. App. Div. 1991)), cited in Everest, 2008 WL 3833586, at *7.  A party may not, however, seek to contradict the express terms of a writing to avoid obligations he knowingly assumes.  Everest, 2008 WL 3833586, at *7.

The Court does not find either of Brown's positions availing.  Addressing first Brown's contention that the personal

guaranty was not a complete expression of his agreement with Plaintiff because the personal guaranty document does not contain an integration clause, the Court finds that Brown's argument is without merit. Brown is correct that the personal guaranty does not contain an explicit integration clause such as the one in Everest, 2008 WL 3833586 at *6-7, where the personal guaranty contained the clause, "This Agreement is intended by the parties as a final expression of their agreement, is intended as a complete statement of such agreement, and is in lieu of any oral understanding." And the Court accepts as true for the purposes of deciding Plaintiff's motion that Schreiber orally represented to Plaintiff that the personal guaranty was a mere formality that would not be enforced against him. But when the terms of the personal guaranty and the other mortgage documents are considered as a whole, it is clear that the documents signed by Brown constitute the entirety of their agreement, and Schreiber's oral representations as to the Bank's future intentions of enforcing the personal guaranty are not part of the parties' contract.

The original December 28, 2011 loan promissory note between Plaintiff and Condor Developers LLC, for which NJG Acquisitions, LLC was the managing member, and of which Brown was the sole member, contains a "cross-collateralization and cross-default" provision. That provision provides, "All property of Borrower

and any property of Guarantor of any kind or nature in which
Bank has been granted security interest hereunder or in which
Bank shall hereafter be granted a security interest or a Lien of
any kind shall constitute Collateral for all Obligations . . .
It shall not be necessary for cross-collateralization, cross-
default, cross-acceleration or cross-guarantee language to be
inserted into any other previously existing or hereafter created
instrument, document, or agreement for this section to be fully
enforceable by Bank against Borrower and Guarantor . . . or any
other documents executed by Borrower and/or Guarantor in favor
of Bank." (Docket No. 39-2 at 7.)

The loan application summary and disclosure signed by Brown
provides in the section identifying him as a guarantor that
"[b]y signing below, the person or persons identified as
Guarantors above understand that they will be required to become
personally obligated to repay the Loan in the event of default."
(Docket no. 39-3 at 17.)

The first modification agreement of the original note
signed by Brown on August 29, 2012 provides, "This First
Modification Agreement encompasses all the modifications,
restatements and extensions to the Existing Note and the
Existing Mortgage, notwithstanding any verbal communications
between the parties." (Docket No. 39-4 at 32.)

The "Guaranty by Daniel Brown and NJG Acquisitions, LLC"

13

provides, "the Undersigned acknowledges that the Bank would not have made nor would it make extensions of credit to the Borrower without the Undersigned jointly and severally guaranteeing, absolutely and unconditionally, the payment and performance of all Obligations of the Borrower owed or due to the Bank, that this Guaranty is a material inducement for the Bank to make extensions of credit to the Borrower, and that the Undersigned will benefit from the Bank making extensions of credit to the Borrower." (Docket No. 39-7 at 2.) It further provides, "The Undersigned agree that they will, from time to time, execute, acknowledge and deliver, or cause to be executed acknowledged and delivered, such supplements hereto and such further documents and instruments as may reasonably be required for carrying out the intention of or facilitating the performance of this Guaranty." (Id. at 8.)

Based on this quoted language, among many other provisions in the loan documents, it is evident that despite the absence of a specific or more targeted integration clause, the loan promissory note, the personal guaranty and the related documents constitute the entire universe of the parties' contractual obligations. The evidence does not show, and indeed contradicts such a position, that oral representations to Brown by the bank's employee could provide supplemental terms to the written documents. The record is undisputable that Brown's obligations

14

set forth in the personal guaranty he signed govern, and not

Schreiber's informal assurances to the contrary. <u>See, e.g.</u>, <u>Dow</u>

<u>Chemical Co. v. Schaefer Salt & Chemical Co.</u>, 1992 WL 672289, at

*18 (D.N.J. 1992) (in considering whether the personal guarantee

documents constituted the final expression of the parties where

the guarantee contracts did not contain a clause stating that

they are the sole and final expression of the parties, the court

finding that a review of the entire guarantees as well as the

record before the court revealed no evidence challenging the

status of the guarantees as a final expression of the terms, and

finding as a matter of law that the personal guarantee documents

constituted a final expression between the parties as to the

terms contained therein).

The terms of the loan and personal guaranty documents

quoted above also show how Plaintiff's fraudulent inducement

argument is unavailing.  Under New Jersey law, reliance upon a

promise not to enforce a note or other similar agreements does

not constitute fraud.  <u>Fr. Winkler KG v. Stoller</u>, 839 F.2d 1002,

1004 n.6, 1006 (3d Cir. 1988)  (applying New Jersey law:

"Neither the parties nor the district court dispute the

application of New Jersey law to the present action.").  The New

Jersey Supreme Court explained why:

> To admit parol proof of a contemporaneous oral agreement
> that so contradicts a lawful, valid written contract as to
> render the latter absolutely impotent, would amount to a

> circumvention of the beneficial object of the parol
> evidence rule.  To hold that parties made two contracts at
> the same time, one of which is in positive contradiction of
> the other is somewhat fantastic.

Fr. Winkler KG v. Stoller, 839 F.2d 1002, 1006 (3d Cir. 1988)

(quoting Reconstruction Finance Corp. v. Gohl, 21 A.2d 693, 696

(N.J. 1941)).  The Third Circuit drove home the point in

considering the case before it, where a signatory to a personal

guaranty filed an affidavit in opposition to summary judgment

contending that he was provided with oral representations that

the personal guaranty was just a formality and would not be

enforced – just as Brown has argued here:

> Stoller contends that his affidavit, submitted in
> opposition to Winkler's motion, created an issue of
> material fact sufficient to preclude the district court's
> entry of summary judgment against him. . . . Stoller
> averred that the plaintiff's employees informed him that
> his personal guarantee was required by Deutche Bank as a
> precondition for discounting additional notes.  Moreover,
> defendant asserted that he was told that his guarantee was
> "a mere formality" and that he would never be held
> personally liable on it.  Stoller contends that these
> misrepresentations constituted fraud. . . .  Defendant
> argues that he was entitled to have his assertions accepted
> as true, and correspondingly, that the district court
> improperly resolved an issue of credibility on a motion for
> summary judgment.
>
> . . .
>
> [P]roof in support of a guarantor's allegation that his
> indorsement was required only as a matter of form, and that
> it would never be enforced, is prohibited by the parol
> evidence rule. The notes are unconditional and indorsed
> without qualification.  They embody the final written
> expression of the parties' agreement, and Stoller's
> affidavit therefore constitutes an attempt to contradict,
> alter, or modify the terms of an integrated contract.  In

fact, Stoller's affidavit would do more than simply modify the notes' terms; it would utterly extinguish them. Notably, Stoller has not asserted failure of consideration, mistake, or accident-allegations that are indeed provable by parol evidence. Finally, the defendant's assertion that Winkler's representations constituted fraud is utterly meritless.

Fr. Winkler KG, 839 F.2d at 1006.

The Third Circuit concluded, "our holding supports the integrity and stability of commercial transactions. The negotiability of commercial paper in the marketplace would be severely impaired if an indorser or guarantor of a note could avoid liability simply by attempting to show that his unqualified written promise to pay was not to be enforced. . . . Because we conclude that Winkler's representations, even if accepted as true, were interdicted by New Jersey's parol evidence rule, we affirm the district court's order dismissing his counterclaim." Id. at 1007.

The Third Circuit's analysis, predicated on New Jersey law, is directly applicable here. The personal guaranty explicitly states that "the Bank would not have made nor would it make extensions of credit to the Borrower without the Undersigned jointly and severally guaranteeing, absolutely and unconditionally, the payment and performance of all Obligations of the Borrower owed or due to the Bank," and "that this Guaranty is a material inducement for the Bank to make extensions of credit to the Borrower." (Docket No. 39-7 at 2.)

17

Just like in <u>Fr. Winkler KG v. Stoller</u> and <u>Reconstruction Finance Corp. v. Gohl</u>, Brown's position that the guaranty was a mere formality and would not be enforced against him is a fantastical position that creates two simultaneous and contradictory contracts which, if credited, would "utterly extinguish" the existence of the guaranty. Such a position is not countenanced under New Jersey law.

Moreover, even accepting as true that Schreiber made verbal assurances to Plaintiff regarding the enforcement of the personal guaranty, Schreiber's alleged misrepresentations do not constitute the requisite "material misrepresentation of a presently existing or past fact" needed to prove fraud in the inducement. <u>See</u> <u>Jewish Ctr. of Sussex Cty.</u>, 86 N.J. at 625. Instead, Brown contends that Schreiber misrepresented future intention: "Mr. Schreiber told me on various occasions since 2011 that, while I was signing extensions, personal guarantees, and the like, **the bank would not be looking to me** for those personal guarantees; rather, it was just necessary to get the financing, and that I would not be personally liable on the loans. I would not have signed these guarantees but for Mr. Schreiber's representations." (Docket No. 91-1 at 2.)(emphasis added).

"It is the general rule that to be actionable, fraud must relate to a present or preexisting fact and cannot ordinarily be

predicated on representations which involve things to be done in the future." Anderson v. Modica, 73 A.2d 49, 52–53 (N.J. 1950) (citing Arnold v. Hagerman, 17 A. 93 (E. & A. 1888)) (other citations omitted). Schreiber's representations to Brown that the "bank would not be looking to me for those personal guarantees" and "I would not be personally liable on the loans" are promises relating to future events. They are not misrepresentations of the past or current state of affairs but rather a prediction of a future act of forbearance that was itself dependent on the contingency that the principal would not satisfy the loan.

Accordingly, even accepting as true all of Brown's assertions in his certification, Brown's fraudulent inducement claim fails as a matter of law.[5] See, e.g., Travelodge Hotels, Inc. v. Honeysuckle Enterprises, Inc., 2005 WL 3164205, at *8 (D.N.J. 2005) ("In the present case any prediction on Evans's or Larson's part that Honeysuckle would enjoy a 15% increase in sales related to future event and cannot constitute fraud in the inducement, because a statement relating to future events cannot

---

[5] Having charged fraud, Brown has the burden of proving its existence as an inducement to the making of the contract for both his counterclaim and affirmative defense to Plaintiff's breach of contract claim. See Invengineering, Inc. v. Foregger Co., 184 F. Supp. 366, 373 (D.N.J. 1960) (citing City of Clifton v. Cresthaven Cemetery Ass'n, 71 A.2d 655, 657 (N.J. Super. Ct. App. Div. 1950) ("The burden of establishing fraud rests upon the party who asserts it.").

satisfy the element of being a statement that is known to be
false at the time it is made.") (citing <u>Anderson</u>, 4 N.J. at 391–
92); <u>Van Dan Egg Co. v. Allendale Farms, Inc.</u>, 159 N.J. Super
452, 457 (App. Div. 1985)); <u>Shtutman v. Carr</u>, 2017 WL 4402045,
at *5 (N.J. Super. Ct. App. Div. 2017) ("Defendant's alleged
statements to plaintiff did not speak to a present or past fact
[to state an actionable fraudulent inducement claim]. Plaintiff
testified at his deposition defendant told him the Indigo-Energy
'stock is going to increase,' it was 'going to rise,' and 'it's
going to go huge,' and how 'terrific everything was going to
be.' Plaintiff also said he was told the stocks 'c[ould]n't do
anything but go up.'  These statements all constituted
predictions about the future.").

In sum, the mortgage documents, including the personal
guaranty signed by Brown, constitute the terms of the parties'
agreements, and those terms cannot be supplemented with
Schreiber's oral representations to Brown.  The personal
guaranty cannot be rescinded based on Schreiber's statements to
Brown because if they were credited, the personal guaranty would
become a nullity.  The personal guaranty also cannot be
rescinded under a fraudulent inducement argument because
Schreiber did not make any representations of past or present
fact.  Consequently, Plaintiff is entitled to summary judgment
in its favor on its breach of contract claim against Brown, and

on Brown's fraudulent inducement counterclaim.

**CONCLUSION**

Even though the Court has determined that Brown is liable under the personal guaranty, because of the particular circumstances of this case, the Court will refrain from entering final judgment against Brown at this time. Plaintiff, Brown, the receiver, and any other interested party shall confer on a procedure to timely and equitably, but still within the rights and obligations of the personal guaranty, move Plaintiff's claim against Brown, as well as Condor and NJG, to final judgment.

As discussed at oral argument, the Court is of the view that the receiver should move expeditiously to conclude a market sale, or if necessary a foreclosure sale, of the property so the Court can conduct those proceedings necessary to quantify the appropriate judgments against Defendants Condor, NJG and now Brown. If the parties cannot agree on that procedure within two weeks of the date of this Opinion, the Court will set a hearing to effect the entry of final judgments.

An appropriate Order will be entered.

Date:  May 2, 2019              s/ Noel L. Hillman
At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.